RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0325P (6th Cir.)
File Name: 02a0325p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

MATCH-E-BE-NASH-SHE-
WISH BAND OF
POTTAWATOMI INDIANS,
      *Plaintiff-Appellant,*

      *v.*

JOHN M. ENGLER, Governor
of the State of Michigan and
THE STATE OF MICHIGAN,
      *Defendants-Appellees.*

No. 01-1624

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 00-00457—Robert Holmes Bell, Chief District Judge.

Argued: August 8, 2002

Decided and Filed: September 20, 2002

Before: MERRITT and DAUGHTREY, Circuit Judges;
WEBER, District Judge.[*]

———————

[*] The Honorable Herman Weber, United States District Judge for the Southern District of Ohio, sitting by designation.

1

---

**COUNSEL**

**ARGUED:** Conly J. Schulte, MONTEAU, PEEBLES & EVANS, Omaha, Nebraska, for Appellant. Keith D. Roberts, OFFICE OF THE ATTORNEY GENERAL OF MICHIGAN, Lansing, Michigan, for Appellee. **ON BRIEF:** Conly J. Schulte, MONTEAU, PEEBLES & EVANS, Omaha, Nebraska, for Appellant. Keith D. Roberts, OFFICE OF THE ATTORNEY GENERAL OF MICHIGAN, Lansing, Michigan, for Appellee.

---

**OPINION**

---

MERRITT, Circuit Judge. This is an Indian gambling case in which the Plaintiff, Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians (the "Tribe"), seeks to force the State of Michigan into negotiations for a casino pursuant to the Indian Gaming Regulatory Act (the "Act"), 25 U.S.C. § 2710(d). Because the Tribe has failed to satisfy the statutory prerequisite of owning Indian lands, *see* 25 U.S.C. § 2710(d)(3)(A), we hold that it is not entitled to relief under the Act. Accordingly, we AFFIRM the district court's grant of the State's motion to dismiss.

## I. Statutory Framework

The Indian Gaming Regulatory Act establishes the framework by which a federally recognized tribe can require a State to enter into negotiations concerning the establishment of a casino. Under the Act, a federally recognized tribe initiates the process by making a formal request to enter into negotiations with the State. If the parties do not reach an agreement within 180 days after the request is made, or if the state fails to bargain in good faith, the tribe may invoke federal court jurisdiction to compel the State to negotiate in

has been federally approved. If the Indian tribe does not have any land in the State that can be used for a casino, why should the State waste its time negotiating about such a casino? In the absence of a location, the State would have no way to assess the environmental, safety, traffic, and other problems that such a casino could pose. The district court's holding that the State may insist that the Tribe fulfill the statutory prerequisites for negotiation before entering into negotiation is an entirely reasonable standing requirement.

As a result of the foregoing, we AFFIRM the district court's dismissal of this action.

good faith. Under the Act, the federal court may order the state to conclude the contract within 60 days. If after that time a compact has not been concluded, the Act allows the Secretary of the Interior to authorize the operation of a casino apart from state authority. If the state asserts Eleventh Amendment immunity in the tribe's suit to compel negotiation, the tribe may go directly to the Secretary of the Interior, pursuant to 25 U.S.C. § 2710(d)(7)(B)(vii). *See Seminole Tribe of Florida v. Florida*, 11 F.3d 1016, 1029 (11th Cir. 1994), *aff'd*, 517 U.S. 44 (1996).

In addition, the Act defines the jurisdiction of the federal courts to hear such claims. Section 2710(d)(7)(A) of the Act limits federal court jurisdiction as follows:

(A) The United States district courts shall have jurisdiction over --
(i) any cause of action initiated by an Indian tribe arising from the failure of a State to enter into negotiations with the Indian tribe for the purpose of entering into a Tribal-State compact under paragraph (3) [§2710(d)(3)(A)] or to conduct such negotiations in good faith.

The applicable part of § 2710(d)(3)(A) further provides:

Any Indian tribe having jurisdiction over the Indian lands upon which a class III gaming activity is being conducted, or is to be conducted, shall request the State in which such lands are located to enter into negotiations for the purpose of entering into a Tribal-State compact governing the conduct of gaming activities. Upon receiving such a request, the State shall negotiate with the Indian tribe in good faith to enter into such a compact.

25 U.S.C. § 2710(d)(3)(A). Lastly, "Indian lands" are defined by the Department of the Interior as:

*Indian lands* means:
(a)   Land within the limits of an Indian reservation; or

(b)  Land  over  which  an  Indian  tribe  exercises
governmental power and that is either --
    (1)  Held in trust by the United States for the benefit
    of any Indian tribe or individual; or
    (2)  Held by an Indian tribe or individual subject to
    restriction by the United States against alienation.

25 C.F.R. § 502.12.  Thus, under section 2710(d)(7)(A), which specifically refers to section 2710(d)(3)(A), federal jurisdiction seems to depend on "any Indian tribe having jurisdiction over the Indian lands upon which" a casino is to be "conducted."

## II.  Analysis

The Tribe is one of twelve federally recognized Indian tribes in the State of Michigan, and the only one that currently does not operate class III gaming.  The Tribe owns lands in Michigan, but both parties agree that these lands are not "Indian lands" as defined by federal regulations.  On September 2, 1999, the Tribe made a formal request to Michigan Governor Engler, asking that he enter into negotiations with the Tribe to open a casino.  The State declined to negotiate, and after 180 days, the Tribe filed this action requesting that the district court order the State to conclude a gaming compact within 60 days, or in the alternative, dismiss the case on Eleventh Amendment state sovereign immunity grounds to allow the Tribe to go directly to the Secretary of the Interior.  The State moved to dismiss on different grounds, arguing that the district court lacked jurisdiction under § 2710(d)(3)(A).  Finding that the lands that the Tribe intends to use for gaming are not "Indian lands," and that ownership of Indian lands is a jurisdictional prerequisite to relief, the district court granted the State's motion.

Upon a close reading of the Act, we agree with the district court's holding.  Having jurisdiction over land for the casino is a condition precedent to negotiations and federal

jurisdiction.  The plain language of § 2710(d)(3)(A) states that for federal courts to have jurisdiction, the tribe seeking relief must be an "Indian tribe having jurisdiction over the Indian lands upon which a Class III gaming activity is . . . to be conducted."  Section (3)(A) describes not just an Indian tribe, but one that is in possession of land.  As the district court found, "[t]he sentence is best read conjunctively -- the party must be an Indian tribe **and** it must have land over which it exercises jurisdiction **and** it must be operating or contemplating the operation of a gaming casino."  JA at 18.  The Act thus establishes a jurisdictional prerequisite to federal court relief -- that the tribe own "Indian lands" and that it plan to conduct the gaming on those lands.

The Tribe argues that the Court is required to address the Eleventh Amendment sovereign immunity question prior to the statutory issue because "Eleventh Amendment immunity issues are required to be addressed by the court before the merits of a case."  Pet. Br. at 14.  The Tribe is correct in reading this Court's prior decision in *Wells v. Brown*, 891 F.2d 591, 592-93 (6th Cir. 1989), as requiring that jurisdictional issues be addressed prior to reaching the merits.  However, in this case  we are dismissing the case based on another jurisdictional issue -- the issue of whether Indian tribes have standing to bring suits under the Indian Gaming Regulatory Act when they do not possess Indian lands. We are not addressing the merits of the case -- whether the State of Michigan has fulfilled its obligation to negotiate in good faith and has reached an agreement within the required statutory time frame.  Obviously, there may be more than one jurisdictional problem in a particular case, and that is true here.

Under § 2710(d)(3)(A), it is clear that the State does not have an obligation to negotiate with an Indian tribe until the tribe has Indian lands.  The purposes of this requirement appear to be to ensure that the casino will be inside the borders of the State, to give the State notice of where it will be, and to require the tribe to have a place for the casino that