**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 23 2004**

**PATRICK FISHER**
Clerk

**PUBLISH**

# UNITED STATES COURT OF APPEALS
# TENTH CIRCUIT

---

NORTHERN ARAPAHO TRIBE,

     Plaintiff-Appellee/
Cross-Appellant,

v.

STATE OF WYOMING and
GOVERNOR JIM GERINGER, his
agents, employees and successors, in
their official capacities,

     Defendant-Appellants/
Cross-Appellees.

Nos. 02-8026
02-8031

---

**Appeal from the United States District Court
for the District of Wyoming
(D.C. No. 00-CV-221-J)**

---

Craig E. Kirkwood, Senior Assistant Attorney General (Patrick J. Crank, Attorney General, and John W. Renneisen, Deputy Attorney General, with him on the briefs), Cheyenne, Wyoming, for Defendants-Appellants/Cross-Appellees.

Andrew W. Baldwin, Baldwin & Crocker, P.C., Lander, Wyoming, for Plaintiff-Appellee/Cross-Appellant.

---

Before **SEYMOUR**, **HENRY** and **LUCERO**, Circuit Judges.

---

**SEYMOUR**, Circuit Judge.

The Northern Arapaho Tribe brought an action seeking a declaration that the state of Wyoming failed to negotiate in good faith with the Tribe in violation of the Indian Gaming Regulatory Act (IGRA), 25 U.S.C. §§ 2701 *et seq*. Partially granting the Tribe's motion for judgment on the pleadings, the district court held that Wyoming failed to negotiate in good faith with regard to calcutta and parimutuel wagering and ordered the parties to complete a compact within sixty days. The court further held that casino-style gaming and slot machine wagering were against Wyoming public policy and thus not subject to negotiation. Both parties appeal. We affirm in part and reverse in part.

**I**

The Northern Arapaho Tribe is a federally recognized Indian tribe with a reservation in the State of Wyoming. Under the IGRA, a tribe must negotiate with the state and enter into a "tribal-state" compact in order to engage in gaming on Indian lands. 25 U.S.C. § 2710(d)(1)(C). Seeking to engage in a casino-style gaming operation on the Wind River Indian Reservation, the Tribe submitted a written request to the state for tribal-state compact negotiations.

The Tribe submitted a proposal to the state under which it would be entitled to operate gaming and gaming machines including poker, video poker, roulette, dice games, sportsbook, parimutuel, wheel of fortune, keno, video keno, raffle/lottery, multi-line slot, regular slot, blackjack, video blackjack, video pull-

-2-

tab, and video horse racing. In response, the state took the position that because Wyoming has a broad criminal prohibition against gambling and exceptions to that prohibition are narrowly drawn, the IGRA requires it to negotiate only regarding the games that Wyoming law specifically permits for commercial purposes. According to the state, the compact negotiations with the Tribe were thus limited to raffles, bingo, pull tabs, calcuttas, and parimutuel wagering.

The Tribe disagreed, claiming that Wyoming was required to negotiate regarding all games listed in the Tribe's proposed compact because state law permitted a nearly unlimited variety of gaming, including "any game, wager or transaction," albeit only for social or non-profit purposes. WYO. STAT. § 6-7-101(a)(iii)(E). Over one hundred eighty days passed without a gaming compact, prompting the Tribe to file suit seeking a declaration that Wyoming had failed to negotiate in good faith in violation of the IGRA. *See* 25 U.S.C. § 2710(d)(7)(B)(i). In addition, the Tribe requested the court to order the state to enter into a tribal-state compact within sixty days. *Id.* § 2710(d)(7)(B)(iii). In the alternative, the Tribe sought an injunction to prevent the state from interfering with the Tribe's alleged right to conduct or regulate class III gaming on Indian lands within Wyoming.

The district court partially granted a motion for judgment on the pleadings in favor of the Tribe, holding that the state's refusal to bargain on calcutta or

parimutuel wagering, other than in strict conformity with state law restrictions that do not apply to tribes under the IGRA, constituted a failure to negotiate in good faith. The court further held, however, that the state was not required to negotiate regarding "casino-style" games or "gaming machines," notwithstanding Wyoming's permissiveness in allowing casino-style gambling for social purposes. The court ordered the parties to enter into a compact within sixty days with regard to calcutta and parimutuel betting.

## II

We review the district court's grant of a judgment on the pleadings *de novo*, applying the same standard of review applicable to a Rule 12(b)(6) motion and construing the pleadings and the reasonable inferences therefrom in the light most favorable to the non-moving party. *Aspenwood Investment Co. v. Martinez*, 355 F.3d 1256, 1259 (10th Cir. 2004).

The IGRA was enacted in 1988 in order to "promot[e] tribal economic development, self-sufficiency, and strong tribal governments." 25 U.S.C. § 2702(1). The statute provides a comprehensive system to regulate gambling activities on Indian lands. *See id*. §§ 2701-2721. The IGRA explicitly states that "Indian tribes have the exclusive right to regulate gaming activity on Indian lands if the gaming activity is not specifically prohibited by Federal law and is

-4-

conducted within a state which does not, as a matter of criminal law and public policy, prohibit such gaming activity." *Id*. § 2701(5). This declaration is consistent with Supreme Court's seminal pre-IGRA decision:

> if the intent of a state law is generally to prohibit certain conduct, it falls within [the state's] criminal jurisdiction, but if the state law generally permits the conduct at issue, subject to regulation, it must be classified as civil/regulatory . . . . The shorthand test is whether the conduct at issue violates the State's public policy.

*California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 209 (1987). Accordingly, the primary issue in this case is whether "such gaming activity" in which the Northern Arapaho Tribe wishes to engage is "prohibited" or merely regulated by the state of Wyoming.

The IGRA divides Indian gaming into three classes: "Class I games" (social games solely for prizes of minimal value or traditional forms of Indian gaming); "Class II games" (bingo, including pull-tabs, lotto, punch boards, tip jars, instant bingo, other games similar to bingo, and certain card games); and "Class III games" (all other gaming including roulette, blackjack, and parimutuel wagering). *See* 25 U.S.C. § 2703(6)-(8). Class I games are not subject to regulation under the IGRA. *Id*. § 2710(a). Class II games are permitted on Indian lands under the IGRA if the game is conducted within a state that permits Class II gaming "for any purpose by any person, organization or entity." *Id*. § 2710(b). Class III gaming activities are "lawful on Indian lands only if such activities are . . . (A)

authorized [by an approved Tribal] ordinance or resolution . . . , (B) located in a State that permits such gaming *for any purpose by any person, organization, or entity*, and (C) conducted in conformance with a Tribal-State compact . . . ." *Id*. § 2710(d) (emphasis added). In order to engage in Class III gaming activities, the Tribe must "request the State in which such lands are located to enter into negotiations for the purpose of entering into a Tribal-State compact governing the conduct of gaming activities." *Id*. § 2710(d)(3)(a). The state must negotiate in good faith with the tribe upon receipt of such a request. *Id*.

The controversy between the Tribe and the state of Wyoming centers on the phrase "located in a State that permits such gaming for any purpose by any person, organization, or entity." *Id*. § 2710(d)(1)(B). As the district court detailed in its opinion, this statutory language has spawned at least two different approaches regarding the scope of negotiations required between tribes and states under the IGRA.

The "Wisconsin" analysis or "categorical" approach requires courts to first review the general scope of gaming permitted by the state. *See, e.g.*, *Lac du Flambeau Band of Lake Superior Chippewa Indians v. Wisconsin*, 770 F. Supp. 480 (W.D. Wis. 1991). If the state permits any form of Class III gaming, the tribe must negotiate to offer all forms of Class III gaming because the state is merely "regulating," rather than "prohibiting," this type of gambling. *Id*. at 484-88. This

categorical approach has been adopted by at least one circuit. *See Mashantucket Pequot Tribe v. Connecticut*, 913 F.2d 1024, 1031-32 (2d Cir. 1990).

The "Florida" analysis or "game-specific" approach requires courts to review whether state law permits the specific game at issue. *See, e.g., Coeur d'Alene Tribe v. Idaho*, 842 F. Supp. 1268, 1278 (D. Idaho 1994) (citing *Seminole Tribe of Florida v. Florida*, 1993 WL 475999 (S.D. Fla. Sept. 22, 1993)). If the state allows a particular game for any purpose, it must negotiate with the tribe over that specific game. *Id.* at 1279-80. Similarly, if the state entirely prohibits a particular game, the state is not required to negotiate with the Tribe as to that game, even if the state permits other games in the same category. *Id.* Under this approach, the state's permissive treatment as to one type of Class III game does not mean that the state must negotiate with tribes as to all Class III games. At least two circuits follow the "game-specific" approach. *See Rumsey Indian Rancheria of Wintun Indians v. Wilson*, 64 F.3d 1250, 1257-58 (9th Cir. 1994); *Cheyenne River Sioux Tribe v. South Dakota*, 3 F.3d 273, 278-79 (8th Cir. 1993).

The district court specifically adopted the "Florida" or "game-specific" approach. We need not decide whether to follow the Wisconsin or Florida analysis regarding the scope of gaming under the IGRA because we conclude that Wyoming must negotiate with the Tribe under either approach regarding the full gamut of "any game, wager or transaction," WYO. STAT. § 6-7-101(a)(iii)(E).

-7-

In order to determine the appropriate scope of negotiations between the Tribe and the state under either analysis, it is critical to determine the scope of gaming permitted by state law. Under Wyoming law, Class III calcutta wagering is permitted on "amateur contests, cutter horse racing, dog sled racing, professional rodeo events or professional golf tournament[s]" if "conducted by a bona fide nationally chartered veterans', religious, charitable, educational or fraternal organization or non-profit local civic or service club . . . ." WYO. STAT. § 6-7-101. For-profit parimutuel wagering is permitted on specified events so long as the profits are limited to 25.90% of the total wagers per event. *Id.* § 11-25-102.

The district court held that because Wyoming law specifically authorizes calcutta and parimutuel wagering, the state is required to negotiate with the Tribe regarding the full gamut of those types of games. The fact that calcutta wagering, under state law, may only be conducted by incorporated non-profit groups for non-profit purposes is inapposite: the tribe is not limited to "just wagering subject to the conditions of WYO. STAT. § 6-7-101(a)(iii)(F) and 11-25-105." Aplt. App. at 139. In other words, the district court held that state law "person" or "purpose" restrictions on calcutta or parimutuel wagering do not apply to tribes under the IGRA.

The state argues that the district court erred in concluding the IGRA

-8-

requires the state to negotiate with the Tribe as to calcutta and parimutuel wagering without regard to the limitations of Wyoming law. If the state's approach were correct, however, "[t]he compact process that Congress established as the centerpiece of the IGRA's regulation of Class III gaming would thus become a dead letter; there would be nothing to negotiate, and no meaningful compact would be possible." *Mashantucket Pequot Tribe*, 913 F.2d at 1031. Furthermore, "the legislative history [of the IGRA] reveals that Congress intended to permit a particular gaming activity, *even if conducted in a manner inconsistent with state law*, if the state law merely regulated, as opposed to completely barred, that particular gaming activity." *United States v. Sisseton-Wahpeton Sioux Tribe*, 897 F.2d 358, 365 (8th Cir. 1990) (emphasis added).

It is clear under Wyoming law that the state regulates, rather than prohibits, calcutta and parimutuel wagering. Thus, the IGRA's requirement that Class III gaming be "located in a State that permits such gaming for any purpose by any person, organization, or entity" is fulfilled. 25 U.S.C. § 2710(d)(1)(B). The state is therefore clearly required to conduct negotiations with the Tribe concerning the full gamut of calcutta and parimutuel wagering.

With regard to the broader issue of other casino-style Class III gambling, the district court recognized that Wyoming allows such activities because it permits "any game, wager or transaction" for social and non-profit purposes.

-9-

WYO. STAT. § 6-7-101(a)(iii)(E). The court stated that "[u]nder a straightforward Florida analysis, Wyoming would have to negotiate over casino-style gambling with the Arapaho because it allows such gaming for any purpose; namely, a social one." Aplt. App. at 140. Nonetheless, the court held the state was not required to negotiate regarding casino-style gambling. Forcing the state to do so simply because Wyoming permits social gambling, the court concluded, would lead to an "absurd result." *Id*. at 140-42. We disagree.

As the district court acknowledged with respect to calcutta and parimutuel wagering, if gaming is permitted by a state "for any purpose by any person," such gaming is lawful on Indian land without the restrictions otherwise imposed on off-reservation gaming as a matter of state law. 25 U.S.C. § 2710(d)(1). The Tribe contends that because the state broadly permits any casino-style gaming for social and non-profit purposes, it is required to negotiate with the Tribe concerning the full gamut of "any game, wager or transaction." WYO. STAT. § 6-7-101(a)(iii)(E).

The state argues that its limited authorization of casino-style gambling for social purposes does not amount to a general allowance of "such gaming" within the contemplation of the IGRA. 25 U.S.C. § 2710(d)(1)(B) (Class III gambling is lawful if "located in a State that permits such gaming for any purpose by any person, organization, or entity"). The state apparently claims that the appropriate

-10-

baseline category to which the term "such gaming" refers is neither all Class III gambling games nor all casino-style gambling games, but rather the subset of specific Class III games at issue—in this instance, casino-style gambling games for non-commercial purposes. The state's argument fails under either the Wisconsin or Florida analysis.

Under the Wisconsin or "categorical" approach, the state must negotiate concerning all forms of Class III gaming because Wyoming permits and regulates "such gaming," albeit only for social and non-profit purposes. Under the Florida or "game-specific" approach, the state must negotiate regarding the broad category of "any game, wager or transaction" because the state specifically permits and regulates all types of "such gaming" for certain purposes by certain people and organizations. We are aware of no court that has approved a state law restriction against gaming "for-profit," "professionally," or anything similar when the state permits the same type of gaming for social and non-profit purposes. Instead, courts have rejected states' attempts to limit negotiations with Tribes due to state law restrictions against commercial gaming. *See, e.g.*, *Mashantucket Pequot Tribe*, 913 F.2d at 1032 (holding that limited permission by state for occasional, charitable gaming does not preclude commercial gambling by Tribe under the IGRA); *Ysleta Del Sur Pueblo v. Texas*, 852 F. Supp. 587, 595-96 (W.D. Tex. 1993) (holding that limited permission for only social gaming under

-11-

state law does not preclude commercial gambling the Tribe seeks under the IGRA), *rev'd on other grounds*, 36 F.3d 1325 (5th Cir. 1994). In sum, if a state permits Class III gaming under the "Wisconsin" approach, or if a state permits any specific games (here, all games) in any fashion under the "Florida" approach, that state must negotiate a compact for those games even if state law restricts the sponsors or purposes of such gaming. The district court erred in concluding to the contrary.

Finally, the state contends the Tribe produced no evidence that the state failed to respond in good faith to the request of the Tribe to negotiate a compact. The district court held that because (1) Wyoming had a duty to negotiate for terms beyond those Wyoming law expressly permits and (2) the state conceded that it only negotiated to the extent that Wyoming law permitted parimutuel and calcutta gaming, the state had not negotiated in good faith. We agree.

The IGRA provides that:

> upon the introduction of evidence by an Indian tribe that . . . (I) a Tribal-State compact has not been entered into . . . and (II) the State did not respond to the request of the Indian tribe to negotiate such a compact or did not respond to such request in good faith, the burden of proof shall be upon the State to prove that the State has negotiated with the Indian tribe in good faith to conclude a Tribal-State compact governing the conduct of gaming activities.

25 U.S.C. § 2710(d)(7)(B)(ii). The Tribe alleged and the state conceded that Wyoming only negotiated regarding "raffles, bingo, pull tabs, calcuttas, and

parimutuel wagering" and only to the extent state law permits such activities. When a state refuses to negotiate beyond state law limitations concerning a game that it permits, the state cannot be said to have negotiated in good faith under the IGRA given the plain language of the statute. Moreover, "when a state wholly fails to negotiate," as Wyoming did here concerning casino-style gambling, "it obviously cannot meet its burden of proof to show that it negotiated in good faith." *Mashantucket Pequot Tribe*, 913 F.3d at 1032.

The judgment of the district court is **AFFIRMED** in part, **REVERSED** in part, and **REMANDED** for further proceedings in accordance with this opinion. Appellee's motion to file a supplemental appendix is granted.