FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| STATE OF IDAHO, a sovereign State of the United States, *Plaintiff-Appellee*, v. COEUR D'ALENE TRIBE, a federally recognized Indian tribe, *Defendant-Appellant*. | No. 14-35753 D.C. No. 2:14-cv-00170-BLW OPINION |

Appeal from the United States District Court
for the District of Idaho
B. Lynn Winmill, Chief District Judge, Presiding

Argued and Submitted
April 6, 2015—Seattle, Washington

Filed July 22, 2015

Before: Michael Daly Hawkins, Johnnie B. Rawlinson,
and Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Hawkins

SUMMARY[*]

## Indian Gaming Regulatory Act / Preliminary Injunction

The panel affirmed (1) the district court's denial of a motion to dismiss the State of Idaho's action alleging that the Coeur d'Alene Tribe's offering of Texas Hold'em poker violated a Tribal-State Gaming Compact entered into under the Indian Gaming Regulatory Act, and (2) the district court's grant of a preliminary injunction.

The panel held that IGRA severed tribal sovereign immunity because Texas Hold'em was explicitly prohibited by Idaho law and therefore was "Class III" gaming under 25 U.S.C. § 2710(d)(7)(A)(ii). The panel rejected the argument that IGRA did not abrogate tribal immunity because the Compact encompassed only a subset of Class III gaming.

The panel held that venue was proper because the Compact permitted litigation as well as arbitration of disputes.

The panel concluded that its immunity analysis determined that Idaho was likely to succeed on the merits. The district court did not err in determining that the State would likely suffer irreparable harm to its economic and public policy interests if the Tribe were not enjoined from offering Texas Hold'em in violation of IGRA and the Compact. The district court did not err in finding that the

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

balance of hardships tipped decidedly in the State's favor and that the public interest supported granting injunctive relief. Accordingly, the panel affirmed the district court's order preliminarily enjoining the Tribe from offering Texas Hold'em.

## COUNSEL

Joseph H. Webster (argued) and F. Michael Willis, Hobbs, Straus, Dean & Walker, LLP, Washington, D.C.; Howard Funke and Kinzo Mihara, Howard Funke & Associates, PC, Coeur d'Alene, Idaho, for Defendant-Appellant.

Hon. Lawrence G. Wasden, Attorney General, Steven L. Olsen, Chief of Civil Litigation, Clay R. Smith (argued) and Tim A. Davis, Deputy Attorneys General, Boise, Idaho; Cally A. Younger, Office of the Governor, Boise, Idaho, for Plaintiff-Appellee.

Scott D. Crowell and Bruce Didesch, Crowell Law Offices, Tribal Advocacy Group, Sedona, Arizona; William Bacon, Office of the Reservation Attorney, Shoshone-Bannock Tribes, General Counsel, Fort Hall, Idaho, for Amicus Curiae Shoshone-Bannock Tribes.

## OPINION

HAWKINS, Circuit Judge:

The Coeur d'Alene Tribe ("Tribe") appeals the preliminary injunction prohibiting the Tribe from offering Texas Hold'em ("Hold'em") poker. The Tribe argues that tribal sovereign immunity was not abrogated and that venue was improper under the terms of the Tribal-State Gaming Compact ("Compact"). We affirm because the Indian Gaming Regulatory Act ("IGRA") severed tribal immunity and the Compact did not bar the litigation. Lastly, we affirm the grant of injunctive relief because the district court's findings were not clearly erroneous.

## FACTUAL AND PROCEDURAL BACKGROUND

As this appeal hinges on the regulation of Indian gaming, we begin with a brief introduction to the IGRA. Congress passed the IGRA in 1988 "in order to provide a statutory basis for the operation and regulation of gaming by Indian tribes." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 48 (1996). "The Act divides gaming on Indian lands into three classes—I, II, and III—and provides a different regulatory scheme for each class." *Id.* "Non-banking" card games (including poker) can be either Class II or Class III gaming, depending on the laws of the state in which the gaming takes place.[1] *See* 25 U.S.C. § 2703.

---

[1] Banking card games are those in which the casino participates "in the game, where the house takes on all players, collects from all losers, and pays all winners, and the house can win." 25 C.F.R. § 502.11. For instance, blackjack is a banked game. *See* 25 U.S.C. § 2703(7)(B)(i). Poker, where players face off against each other, is the prototypical

Non-banking card games are Class II if they "are explicitly authorized by the laws of the State, or are not explicitly prohibited by the laws of the State and are played at any location in the State." *Id.* § 2703(7)(A)(ii).  Class III gaming is a residual category that consists of "all forms of gaming that are not class I gaming or class II gaming," § 2703(8), and is "the most heavily regulated of the three classes." *Seminole Tribe*, 517 U.S. at 48.  Such gaming "is lawful only where it is . . . conducted in conformance with a Tribal–State compact."   *Id.* at 48–49 (quoting 25 U.S.C. § 2710(d)(1)).

Several years after Congress enacted the IGRA, the State and Tribe executed a Compact authorizing the Tribe to offer Class III gaming.  The parties failed to reach accord on the scope of gaming allowed by Idaho law.  The State argued that Idaho law only permitted the state lottery and parimutuel betting, while the Tribe countered that it allowed "all games that contain the elements of chance and or skill, prize and consideration."  The Compact authorized the parties to seek a declaratory judgment to resolve the dispute.

The Tribe filed suit in federal court in pursuit of such a declaration.  The district court held on summary judgment that Idaho law only allowed "a lottery and parimutuel betting" and that "Idaho law and public policy clearly prohibit all other forms of Class III gaming, including the casino gambling activities which the Tribes have sought to include in compact negotiations with the State." *Coeur d'Alene Tribe v. Idaho*, 842 F. Supp. 1268, 1283 (D. Idaho

---

non-banked game. *See* National Indian Gaming Commission ("NIGC") Bulletin No. 95-1 (Apr. 10, 1995).

1994) ("*Coeur d'Alene I*").  The Ninth Circuit affirmed. *Coeur d'Alene Tribe v. Idaho*, 51 F.3d 876 (9th Cir. 1995).

In March 2014, Idaho officials learned that the Tribe intended to offer Hold'em at the Coeur d'Alene Casino. Shortly after providing notice of non-compliance, the State filed a complaint and moved for a temporary restraining order and a preliminary injunction.  The Tribe moved to dismiss pursuant to Rules 12(b)(1), (3), & (6), arguing that tribal sovereign immunity applies and that venue was improper.

The district court denied the motion for injunctive relief as moot, granted the Tribe's request to compel arbitration, stayed the litigation, and directed the parties to file a joint status report, concluding that the Compact prohibited the State from litigating at that juncture.  The court "refrain[ed] from rendering an opinion" as to whether the parties could litigate the dispute if neither party invoked arbitration.

The joint status report informed the court that neither party had invoked arbitration and asked the court to decide the pending motion to dismiss.  The court denied the motion to dismiss and granted a preliminary injunction, determining that the Tribe had elected to pursue litigation.  The court concluded that the statute abrogated tribal immunity, and determined that an injunction was warranted because the State otherwise lacked effective remedies and the continued offering of unlawful gaming would cause irreparable harm. The Tribe filed timely notice of appeal.

**JURISDICTION AND STANDARD OF REVIEW**

"The general federal-question statute, 28 U.S.C. § 1331, gives a district court subject matter jurisdiction to decide any

claim alleging a violation of IGRA." *Michigan v. Bay Mills Indian Cmty.*, 134 S. Ct. 2024, 2029 n.2 (2014). The court had jurisdiction pursuant to § 1331 because Idaho alleged a violation of the IGRA. *See Oklahoma v. Hobia*, 775 F.3d 1204, 1213 (10th Cir. 2014).[2]

The existence of sovereign immunity is a question of law reviewed de novo. *See Allen v. Gold Country Casino*, 464 F.3d 1044, 1046 (9th Cir. 2006). The classification of Texas Hold'em hinges on statutory interpretation, which is also reviewed de novo, *see Schleining v. Thomas*, 642 F.3d 1242, 1246 (9th Cir. 2011), as is the district court's venue ruling. *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010).

A preliminary injunction ruling "is subject to limited appellate review, and we will reverse only if the district court 'abused its discretion or based its decision on an erroneous legal standard or on clearly erroneous findings of fact.'" *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 422 F.3d 782, 793 (9th Cir. 2005) (quoting *United States v. Peninsula Commc'ns, Inc.*, 287 F.3d 832, 839 (9th Cir. 2002)).

---

[2] The district court merged the jurisdiction and immunity inquiries, asserting jurisdiction because § 2710(d)(7)(A)(ii) was satisfied. *Bay Mills* instructs that analyzing § 2710(d)(7)(A)(ii) in jurisdictional terms is "wrong" and that "[n]othing in § 2710(d)(7)(A)(ii) or any other provision of IGRA limits [1331's] grant of jurisdiction (although those provisions may indicate that a party has no statutory right of action)." 134 S. Ct. at 2029 n.2. The district court should have asserted jurisdiction based on *Bay Mills*' analysis of § 1331.

## ANALYSIS

### I.   Tribal Sovereign Immunity

An Indian tribe is subject to suit only when Congress has abrogated the tribe's sovereign immunity by statute or when the tribe has waived its immunity. *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998). To abrogate immunity by statute, Congress must unequivocally express its intent to do so. *See C & L Enters., Inc. v. Citizen Band Potawatomi Tribe of Okla.*, 532 U.S. 411, 418 (2001).

The relevant federal statute provides that "district courts shall have jurisdiction over . . . any cause of action initiated by a State or Indian tribe to enjoin a class III gaming activity located on Indian lands and conducted in violation of any Tribal-State compact. . . ." 25 U.S.C. § 2710(d)(7)(A)(ii). In order to abrogate immunity, all of the statute's "textual prerequisites must be met." *Michigan v. Bay Mills Indian Cmty.*, 695 F.3d 406, 414 (6th Cir. 2012), *aff'd and remanded*, 134 S. Ct. 2024 (2014).

In *Bay Mills*, the statute did not abrogate immunity because the conduct Michigan sought to enjoin was not located on Indian land and was not Class III gaming. 134 S. Ct. at 2032–34. Likewise, the Tribe contends here that the statute does not abrogate immunity because Hold'em is Class II gaming and the Compact does not address it. Thus, the immunity inquiry necessarily requires the determination of whether Hold'em qualifies as Class III gaming.

### A. Classification of Texas Hold'em

As discussed *supra*, non-banking card games are Class II gaming if they are either "explicitly authorized by the laws of the State" or "are not explicitly prohibited by the laws of the State and are played at any location in the State." § 2703(7)(A)(ii). The district court properly determined that Hold'em is not a Class II game because the Idaho Constitution and gaming statute explicitly prohibit poker.[3]

The Idaho Constitution provides that "[g]ambling is contrary to public policy and is strictly prohibited. . . ." ID. CONST. art. III, § 20. The constitution contains three exceptions for the lottery, parimutuel betting, and bingo and raffle charity games but reaffirms that the exceptions may not "employ any form of casino gambling including, but not limited to . . . poker." *Id.* The enabling statute specifically prohibits poker by defining gambling as "risking any money, credit, deposit or other thing of value for gain contingent in whole or in part upon lot, chance, . . . or the happening or outcome of an event, . . . including, but not limited to, blackjack, craps, roulette, poker." IDAHO CODE § 18-3801(1); *see also* § 3802 (gambling is a misdemeanor). Hold'em can only be Class II gaming if an exception in Idaho law applies.[4]

---

[3] The parties do not dispute that Texas Hold'em is a type of poker.

[4] The canon of statutory interpretation that ambiguities in federal statutes enacted to benefit Indians should be resolved in their favor, *Montana v. Blackfeet Tribe of Indians*, 471 U.S. 759, 766 (1985), does not apply here because Idaho law is at issue and, regardless, the statute is unambiguous.

The Tribe's interpretations of Idaho law are not persuasive.   Though skill undoubtedly plays a role in Hold'em,**5** the game does not qualify for the statutory exemption for bona fide contests of skill, speed, strength or endurance. *See* IDAHO CODE § 18-3801.  A contrary reading would impermissibly place the statute in conflict with the constitution's prohibition on poker.  *See Bingham Cnty. v. Idaho Comm'n for Reapportionment*, 55 P.3d 863, 867 (Idaho 2002) ("[I]f the State Constitution and a statute conflict, the State Constitutional provision prevails.").**6**

The Tribe's interpretation would also force the specific prohibition on poker to yield to a general exception for "contests of skill."  *See Morton v. Mancari*, 417 U.S. 535, 550–51 (1974) (weighting the general in favor of the specific is impermissible, unless the drafters clearly intended the effect).  The Tribe does not show that the legislature intended this effect.

Nor does the "promotional contests" exception authorize Hold'em.  In a handful of clearly distinguishable cases, courts have determined that gaming statutes permitting casino nights for charitable purposes establish that gaming is "explicitly authorized by the laws of the State" and that a Tribe may thus

---

**5** *See, e.g.*, Steven D. Levitt, Thomas J. Miles & Andrew M. Rosenfield, *Is Texas Hold'Em A Game of Chance?  A Legal and Economic Analysis*, 101 GEO. L.J. 581, 585 (2013).

**6** Reading the statutory exception as permitting skill-intensive poker would produce the absurd result of giving a statute enabling a strict constitutional prohibition on gambling the effect of permitting it, depending on the level of skill involved in the game.  "The Court disfavors constructions that would lead to absurd . . . results." *State v. Doe*, 92 P.3d 521, 525 (Idaho 2004).

offer those games. *See, e.g.*, *N. Arapaho Tribe v. Wyoming*, 389 F.3d 1308, 1312–13 (10th Cir. 2004); *Mashantucket Pequot Tribe v. Connecticut*, 913 F.2d 1024, 1031–32 (2d Cir. 1990). Unlike the statutes in *Arapaho* and *Mashantucket*, Idaho law does not permit social or charitable casino gaming. Rather, it permits "promotional contests and drawings conducted incidentally to bona fide nongaming business operations." IDAHO CODE § 18-3801(4). The exception only allows contests when "prizes are awarded without [charging] consideration," *id.*, a category that does not include Hold'em.

Uneven enforcement of the poker prohibition does not convert Hold'em into Class II gaming. Whether Hold'em is "played at any location in the State" is largely irrelevant because the statute is conjunctive and one of the conditions is not satisfied. *See* 25 U.S.C. § 2703(7)(A)(ii) (Class II games "are not explicitly prohibited by the laws of the State *and* are played at any location in the State") (emphasis added). As poker is explicitly prohibited, it does not matter whether it is played in the State. Nor does the exercise of prosecutorial discretion show that poker is not prohibited by law. *See generally Bland v. Fessler*, 88 F.3d 729, 737 (9th Cir. 1996). Even if desuetude were a valid legal principle, the record shows that the State enforces the statute and has not disavowed it.[7]

---

[7] The passage from *Artichoke Joe's California Grand Casino v. Norton*, 353 F.3d 712, 722 (9th Cir. 2003), that "mere tolerance of class III gaming might be enough to satisfy § 2710(d)(1)(B)'s requirement," does not compel a contrary result. *Artichoke Joe's* addressed a separate provision of the IGRA, and is thus not on point. The case, even if it were on point, does not decide the question. Lastly, the passage is dicta that has never been adopted as a holding.

### B.  Violation of the Compact

The Tribe next argues that the statute does not abrogate tribal sovereign immunity because the Compact only encompasses a subset of Class III gaming.  We affirm because the Compact comprehensively addresses the full range of Class III gaming.

As discussed *supra*, Article 6.2 of the Compact only permits the lottery, parimutuel betting, and additional games that "may hereafter be authorized to be conducted in the State."  The parties disagreed as to the scope of gaming permitted and agreed to pursue a declaratory judgment, which *Coeur d'Alene I* resolved by stating that no other gaming was permitted in Idaho.

Article 6.5 of the Compact squarely addresses this contingency in providing that, upon conclusion of the litigation, "[i]n the event the court(s) determines that no additional types of games are permitted in Idaho under the Act, the Tribe's gaming shall be limited to the gaming authorized in Article 6.2."  Articles 6.2 and 6.5 comprehensively address which Class III games are permitted and prohibited.

The Tribe argues that our decision in *Cabazon Band of Mission Indians v. Wilson*, 124 F.3d 1050 (9th Cir. 1997), shows that the Tribe did not violate the Compact.  But the Compact in *Cabazon* only addressed parimutuel betting.  *Id.* at 1059.  Thus, we determined that slot machines were "not the subject of a Tribal-State compact."  *Id.*  Here, in contrast, the Compact covers all Class III gaming.  The finding that the Band did not breach the Compact "[b]ecause the slot machines . . . are not mentioned," *id.* at 1060, does not apply

where, as here, the Compact establishes that "gaming shall be limited to the gaming authorized in Article 6.2."

## II. Venue

The Tribe argues that venue was improper because the Compact provides an exclusive dispute resolution mechanism. The court did not analyze the arbitration clause, instead concluding that the Tribe "decided it would prefer to litigate." We affirm based on the Compact.[8]

The Compact permits litigation, provided neither party has given notice of its intent to pursue arbitration. It provides "[i]f the dispute is not resolved . . . within sixty days after service of the notice . . . either party *may* pursue binding arbitration to enforce or resolve disputes." Tribal-State Gaming Compact at 27 (emphasis added). In contrast, the Compact contains an exclusive complaint mechanism. *Id.* Interpreting the contract "as a whole and every part . . . with reference to the whole," *Shakey's Inc. v. Covalt*, 704 F.2d 426, 434 (9th Cir. 1983), the Compact contains a mandatory complaint mechanism and a permissive arbitration mechanism.

"To be mandatory, a clause must contain language that clearly designates a forum as the exclusive one." *N. California Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034, 1037 (9th Cir. 1995). The arbitration clause does not clearly designate an exclusive forum. Rather, it provides that "both parties consent to binding arbitration as provided herein." A clause in which parties consent to

---

[8] The panel may affirm on any basis finding support in the record. *See United States v. Campbell*, 291 F.3d 1169, 1172 (9th Cir. 2002).

arbitrate does not constitute a clear designation of an exclusive forum.

Applying the principle of *expressio unius est exclusio alterius*, *see Lares v. West One Bank (In re Lares)*, 188 F.3d 1166, 1169 (9th Cir. 1999) (citing *Ace Realty, Inc. v. Anderson*, 682 P.2d 1289, 1296 (Idaho Ct. App. 1984)), the clause providing arbitral exclusivity in a narrow circumstance supports the interpretation that litigation is not barred in other circumstances or in general. The Compact states that "[o]nce a party has given notice of intent to pursue binding arbitration . . . the matter in controversy may not be litigated in court." The parties could have only logically intended that, absent such notice, litigation would be permitted. Otherwise, this clause would be meaningless surplusage, informing the parties that in addition to always barring litigation, the Compact also bars it when arbitration is invoked. *See Wright v. Vill. of Wilder*, 117 P.2d 1002, 1003 (Idaho 1941) ("[T]he various provisions of a contract or statute must be so construed (if possible) as to give force and effect to every part thereof.").[9]

## III.    Preliminary Injunction

To obtain a preliminary injunction, the moving party "must establish that: (1) it is likely to succeed on the merits;

---

[9] Although ambiguous arbitration clauses are to be resolved in favor of coverage, *see AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986), the rule does not apply here because the arbitration clause is unambiguous. Furthermore, the rule pertains to disputes about the scope of arbitration clauses. Here, in contrast, the State and Tribe concur that the arbitration clause would have applied if either party invoked it. The parties do not dispute the scope of the clause, but its effect (whether it provides an exclusive forum).

(2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). The parties do not dispute that our immunity analysis determines the "success on the merits" prong.

On the irreparable harm prong, the district court did not err in determining that the State would likely suffer irreparable harm to its economic and public policy interests if the Tribe were not enjoined from offering Hold'em in violation of IGRA and the Compact. *See Kansas v. United States*, 249 F.3d 1213, 1228 (10th Cir. 2001). Purely economic harms are generally not irreparable, as money lost may be recovered later, in the ordinary course of litigation. *Sampson v. Murray*, 415 U.S. 61, 61–62, 89–92 (1974) (reversing injunction against firing of probationary government employee because loss of earnings is not irreparable harm). But, as the Tribe conceded at argument, the Tribe's sovereign immunity likely would bar the State from recovering monetary damages incurred during the course of this litigation due to the Tribe's violation of IGRA and the Compact. *See* 25 U.S.C. § 2710(d)(7)(A)(ii)); *see also Wisconsin v. Stockbridge-Munsee Cmty.*, 67 F. Supp. 2d 990, 1019–20 (E.D. Wis. 1999) (Tribe's sovereign immunity limits availability of alternative remedies). The inferences made by the district court based on the record did not constitute an abuse of discretion. *See Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1195–96 (9th Cir. 2011); *see also Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 1000 (9th Cir. 2011) (suggesting that reviewing court may evaluate arguments presented on appeal).

Similarly, the district court did not err in finding that the balance of hardships tipped decidedly in the State's favor and that the public interest supported granting injunctive relief. Allowing the Tribe to continue to offer Hold'em would permit ongoing violations of the Compact and federal law. In contrast, the primary public interest that would be served by denying the motion for injunctive relief—the economic benefits to be gained by offering Hold'em—would only accrue by permitting unlawful gaming.

## CONCLUSION

We affirm the district court's denial of the Tribe's motion to dismiss. The district court correctly determined that the elements of the statute were satisfied, such that the Tribe's sovereign immunity was abrogated. We affirm the court's venue ruling, although we do so on the basis of the terms of the Compact. Lastly, we affirm the grant of injunctive relief because the district court's findings are supported by the record.

**AFFIRMED.**