## IN THE UNITED STATES COURT OF APPEALS
### FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 30, 2011

No. 10-50804

Lyle W. Cayce
Clerk

STATE OF TEXAS

Plaintiff-Appellee

v.

YSLETA DEL SUR PUEBLO; TIGUA GAMING AGENCY; TRIBAL
COUNCIL; ALBERT ALVIDREZ, Tribal Governor; CARLOS HISA, Tribal
Lieutenant Governor

Defendants-Appellants

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:99-CV-320

Before WIENER, BENAVIDES, and STEWART, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Ysleta del Sur Pueblo (the "Tribe") has been locked
in litigation with the State of Texas (the "State" or "Texas") for many years over
gaming activities conducted at the Tribe's casino. In this appeal — the third in
a series of related appeals spanning almost twenty years — the Tribe contests
a contempt order issued by the district court. The Tribe asserts that the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 10-50804

contempt order is improper because (1) it is criminal in nature, but the district court treated it as a civil contempt order, and (2) the district court exceeded its authority when it granted state agents monthly access to the Tribe's gaming records. Disagreeing with the Tribe and concluding that the contempt order was properly issued and is valid, we affirm that order and dismiss the Tribe's appeal.

## I. FACTS & PROCEEDINGS

The controversy underlying this case has a long history.[1] Since the mid-1980's, the gaming endeavors of the Tribe, a federally recognized Indian[2] tribe located near El Paso, Texas, have been governed by the Restoration Act,[3] which sharply curtails the Tribe's right to engage in gaming activities and limits such activities to those expressly permitted by Texas law.[4] The Restoration Act permits Texas to seek an injunction in federal court if the Tribe should engage in gaming activities prohibited by Texas law.[5]

In a reversal of its original position on gambling,[6] the Tribe filed a civil action in 1993, seeking to force the State to negotiate a Tribe-State compact that

---

[1] *See Ysleta del Sur Pueblo v. Texas* (*Ysleta I*), 36 F.3d 1325, 1327-1332 (5th Cir. 1994), *cert. denied*, 514 U.S. 1016 (1995) (documenting in depth the history of the Tribe and the federal statutes governing Native American gambling).

[2] In the interests of consistency and because we used the term "Indian" in *Ysleta I*, we employ it now rather than the often preferred term "Native American."

[3] 25 U.S.C. § 1300g.

[4] *Id.* § 1300g-6(a).

[5] *Id.* § 1300g-6(c).

[6] *Ysleta I*, 36 F.3d at 1328 ("[T]he Tribe, at the time of the resolution's adoption, ha[d] no interest in conducting high stakes bingo or other gambling operations on its reservation and remain[ed] firm in its commitment to prohibit outright any gambling or bingo in any form on its reservation." (first alteration added, second and third alterations in original, and internal quotation marks omitted)).

No. 10-50804

would allow gaming activities on the reservation.[7] When that case was appealed to this court, we concluded that (1) the gaming laws and regulations of Texas operate as surrogate federal law on the Tribe's reservation,[8] and (2) the Tribe must conform to those laws unless it can persuade Congress to amend or repeal the Restoration Act.[9]

Despite this ruling, the Tribe began to offer a variety of gambling games at the Speaking Rock Casino (the "Casino") located on tribal lands. The Casino started as a bingo hall, but its operations were expanded to include slot machines, poker, blackjack, dice, and other forms of gambling prohibited by Texas law. In 1999, the Attorney General of Texas, using the avenue of relief permitted to the State under the Restoration Act,[10] filed a civil suit in the district court to enjoin the activities of the Casino deemed to be in violation of Texas law. In 2001, the district court granted the State's motion for summary judgment and entered the requested injunction.[11] Once again, the Tribe appealed to us, and once again, its appeal was unsuccessful.[12] Following that second appeal, the district court modified the injunction to clarify that the Tribe was not prohibited from engaging in the few gaming activities that are lawful in Texas.[13]

---

[7] *Id.* at 1331.

[8] *Id.* at 1335.

[9] *Id.*

[10] 25 U.S.C. § 1300g-6(c) ("[N]othing in this section shall be construed as precluding the State of Texas from bringing an action in the courts of the United States to enjoin violations of the provisions of this section.").

[11] *Texas v. Ysleta del Sur Pueblo*, 220 F. Supp. 2d 668, 697-98 (W.D. Tex. 2001).

[12] *See generally Texas v. Ysleta del Sur Pueblo* (*Ysleta II*), 69 F. App'x 659 (5th Cir.) (unpublished), *cert. denied*, 540 U.S. 985 (2003).

[13] Order Modifying September 27, 2001, Injunction, 220 F. Supp. 2d at 709.

No. 10-50804

In 2008, the Texas Attorney General filed a motion for contempt based on asserted violations of the amended injunction. The State contended that the Tribe was operating "eight-liner" gaming devices[14] in the Casino in a manner that violated TEX. PENAL CODE § 47.01(4). Texas only permits the operation of eight-liners if the machines reward players "exclusively with noncash merchandise prizes, toys, or novelties, or a representation of value redeemable for those items, that have a wholesale value available from a single play of the game or device of not more than 10 times the amount charged to play the game or device once or $5, whichever is less."[15] In violation of this restriction, the Casino was issuing Visa debit cards[16] to winning players in amounts in excess of five dollars.

The district court held an evidentiary hearing on the State's motion for contempt, explicitly limiting the scope of the hearing to determining whether the Tribe's operation of the eight-liner machines violated Texas law. The district court ultimately granted the State's contempt motion and ordered the Tribe to allow representatives of the State monthly access to the Casino's records and all of the Tribe's books and records relating to its gaming operations. The Tribe moved to amend the court order to limit the State's inspections to records pertaining to eight-liners only. After the district court granted that motion late in July 2010, the Tribe appealed the contempt order (*Ysleta III*).

## II.  STANDARD OF REVIEW

---

[14] An eight-liner is an electronic device often described as video poker or video lottery. *See Owens v. State*, 19 S.W.3d 480, 481 (Tex. App.—Amarillo 2000, no pet.).

[15] TEX. PENAL CODE ANN. § 47.01(4)(B).

[16] "Cash" in this context is not limited to coins and paper money, but also includes other mechanisms of payment. *See Hardy v. State*, 102 S.W.3d 123, 131-32 (Tex. 2003).

No. 10-50804

We review a contempt order de novo.[17]  We review sanctions granted by the district court for abuse of discretion[18] and review its factual findings that underlie sanctions for clear error.[19]

## III.  ANALYSIS

*A.  Contempt Order*

The Tribe contends that the sanctions imposed by the district court were criminal in nature, so that the civil contempt proceedings conducted by that court were inappropriate.  Concluding that the contempt order was civil in nature, we hold that the district court properly granted that order.

We consider several factors when determining whether a contempt proceeding is criminal or civil in nature.  Several key distinctions between the two are:

> (1) civil contempt lies for refusal to do a commanded act, while criminal contempt lies for doing some forbidden act;
> (2) a judgment of civil contempt is conditional, and may be lifted if the contemnor purges himself of the contempt, while punishment for criminal contempt is unconditional;
> (3) civil contempt is a facet of the original cause of action, while criminal contempt is a separate cause of action brought in the name of the United States;
> (4) the notice for criminal contempt must indicate the criminal nature of the proceeding.[20]

---

[17] *Positive Software Solutions, Inc. v. New Century Mortg. Corp.*, 619 F.3d 458, 460 (5th Cir. 2010) (citing *FDIC v. Maxxam, Inc.*, 523 F.3d 566, 590 (5th Cir 2008)).

[18] *Maxxam*, 523 F.3d at 590 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 54 (1991)).

[19] *See Crowe v. Smith*, 151 F.3d 217, 238-39 (5th Cir. 1998).

[20] *Skinner v. White*, 505 F.2d 685, 688-89 (5th Cir. 1974) (citations omitted).

No. 10-50804

Another factor is the purpose of the order, namely, whether the order is meant to be punitive or merely coercive and remedial.[21]

In this instance, all factors confirm that the contempt order is civil in nature, not criminal. When the Tribe offered cash prizes in excess of five dollars, it violated the terms of the injunction, i.e., that it adhere to Texas gaming law, and thus was refusing to do a commanded act. Next, the contempt order is conditional because the Tribe "carr[ies] the keys of their prison in their own pockets."[22] For instance, the Tribe could cease to operate eight-liners at the Casino until the court ruled on future operations, or it could submit evidence of compliance to the district court and ask for the contempt order to be removed or modified. Further, the State brought its motion for contempt in the context of a larger, lengthy, civil litigation proceeding.[23] And, the State was acting not in a prosecutorial role or as a representative of the public, but directly as the complainant, as it was entitled to do under the Restoration Act. Morever, the sanctions contained in the contempt order confirm that its purpose was remedial — to ensure compliance with the terms of the injunction — rather than punitive for violating those terms. As the contempt order was indisputably civil in nature, the district court did not need to provide the additional procedural safeguards required for criminal contempt orders.

---

[21] *In re Hunt*, 754 F.2d 1290, 1293 (5th Cir. 1985) (citations omitted).

[22] *Shillitani v. United States*, 384 U.S. 364, 368 (1966) (internal quotation marks and citation omitted). *See also Lance v. Plummer*, 353 F.2d 585, 592 (5th Cir. 1965) ("[S]anctions imposed in civil contempt proceedings must always give to the alleged contemnor the opportunity to bring himself into compliance, the sanction cannot be one that does not come to an end when he repents his past conduct and purges himself.").

[23] *See Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 444-45 (1911) ("Proceedings for civil contempt are between the original parties, and are instituted and tried as a part of the main cause. But, on the other hand, proceedings at law for criminal contempt are between the public and the defendant, and are not a part of the original cause.").

No. 10-50804

*B.  Judicial Authority*

The Tribe also contends that the district court exceeded its authority when it entered an order that would permit state agents to conduct regulatory inspections on a federal enclave to enforce federal law.  Stated differently, the Tribe asserts that the district court exceeded the statutory authority granted by Congress by giving the State regulatory authority and the power to enforce federal law over the Tribe.  The Tribe also claims that the district court improperly delegated its judicial authority to the state agents.  Once again, we conclude that the district court acted properly and that the Tribe's position  on this issue is simply wrong.

The district court did not grant Texas either regulatory or enforcement authority over the Tribe when it authorized state agents to conduct inspections of the Tribe's gaming records.  According to the specific wording of the order, the state agents are only empowered to *inspect* those records.  Then, if they should find any irregularities, the State would have to return to the district court for further action.  As noted above, the Tribe, not the State, controls the duration of the inspection regime, as it may either cease to operate the machines in question or file evidence of its compliance in the district court and seek modification or removal of the order.  As Texas can neither issue sanctions nor control the duration of the inspections, the contempt order does not grant the State regulatory or enforcement power over the Tribe.

Neither has the district court improperly delegated an adjudicatory role to the State.  The limited right of inspection in the instant case is analogous to discovery.  We have previously noted that district courts have broad discretion when it comes to matters relating to discovery, and that "it is unusual to find abuse of discretion in these matters."[24]  The district court has been taking an

---

[24] *Swanner v. United States*, 406 F.2d 716, 719 (5th Cir. 1969) (citation omitted).  *See also Mayo v. Tri-Bell Indus., Inc.*, 787 F.2d 1007, 1012 (5th Cir. 1986) (citations omitted)

No. 10-50804

active role in overseeing the "discovery" at issue here, as evidenced by its modification of the original contempt order to narrow its focus to the Tribe's use of eight-liners.

As the district court only authorized additional discovery and did not delegate any regulatory, enforcement, or adjudicatory power to the State, it did not exceed its authority when it granted the contempt order authorizing state agents to inspect the Tribe's gaming records.

## IV.  CONCLUSION

The district court did not abuse its discretion or otherwise err when it granted the contempt order, an order that was clearly civil in nature.  Neither did the court's contempt order impermissibly delegate any regulatory, enforcement, or adjudicatory authority to the State when it permitted monthly inspections of tribal records pertaining to the operation of eight-liners.  We affirm the district court's contempt order allowing inspection of tribal records by state agents with respect to the operation of eight-liners.

AFFIRMED.

---

("Control of discovery is committed to the sound discretion of the trial court and its discovery rulings will be reversed only where they are arbitrary or clearly unreasonable.").