Revised April 3, 2020

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

April 2, 2020

Lyle W. Cayce
Clerk

No. 19-50400

STATE OF TEXAS,

> Plaintiff–Appellee,

v.

YSLETA DEL SUR PUEBLO; THE TRIBAL COUNCIL; TRIBAL
GOVERNOR MICHAEL SILVAS OR HIS SUCCESSOR,

> Defendants–Appellants.

Appeal from the United States District Court
for the Western District of Texas

Before DENNIS, GRAVES, and WILLETT, Circuit Judges.

DON R. WILLETT, Circuit Judge:

For a generation, the State of Texas and a federally recognized Indian tribe, the Ysleta del Sur Pueblo, have litigated the Pueblo's attempts to conduct various gaming activities on its reservation near El Paso. This latest case poses familiar questions that yield familiar answers: (1) which federal law governs the legality of the Pueblo's gaming operations—the Restoration Act (which bars gaming that violates Texas law) or the more permissive Indian Gaming Regulatory Act (which "establish[es] . . . Federal standards for gaming on Indian lands"); and (2) whether the district court correctly enjoined the Pueblo's gaming operations. Our on-point precedent conclusively resolves this

case. The Restoration Act controls, the Pueblo's gaming is prohibited, and we affirm.

## I. BACKGROUND

### A.    The Restoration Act

In 1987, Congress passed and President Reagan signed the Ysleta del Sur Pueblo and Alabama and Coushatta Indian Tribes of Texas Restoration Act.[1] But the Pueblo's "restoration" came with a catch: In exchange for having its federal trust status restored,[2] the Pueblo agreed that its gaming activities would comply with Texas law.

Section 107(a) of the Restoration Act is unequivocal:

> All gaming activities which are prohibited by the laws of the State of Texas are hereby prohibited on the reservation and on lands of the tribe. Any violation of the prohibition provided in this subsection shall be subject to the same civil and criminal penalties that are provided by the laws of the State of Texas. The provisions of this subsection are enacted in accordance with the tribe's request in Tribal Resolution No. T.C.-02-86[.][3]

The Tribal Resolution is similarly clear. The Pueblo requested that Congress add language to § 107 "which would provide that all gaming, gambling, lottery, or bingo, as defined by the laws and administrative regulations of the State of

---

[1] Pub. L. 100-89; 25 U.S.C. § 1300g *et seq.* The updated United States Code omits the Restoration Act, but as we noted last year, "the Restoration Act is still in effect." *Texas v. Alabama-Coushatta Tribe of Tex.*, 918 F.3d 440, 442 n.1 (5th Cir. 2019), *cert. denied*, 140 S. Ct. 855 (2020). The Act is available at https://www.govinfo.gov/content/pkg/STATUTE-101/pdf/STATUTE-101-Pg666.pdf.

[2] Pub. L. 100-89, 101 Stat 666 (1987); 25 U.S.C. § 1300g *et seq.* In 1968, Congress recognized the Pueblo as a tribe and transferred trust responsibilities to Texas. S. Rep. No. 100-90 (1987), at 7. In 1983, however, the Texas Attorney General decided that the State could not continue a trust relationship with any Indian tribe because such an agreement discriminates between tribal members and other Texans based on national origin in violation of the State Constitution. Jim Mattox, *Opinion Re: Enforcement of the Texas Parks and Wildlife Code within the Confines of the Alabama-Coushatta Indian Reservation*, No. JM-17 (Mar. 22, 1983). So the Pueblo and another Texas tribe sought a federal trust relationship instead. *See* S. Rep. No. 100-90 (1987), at 7.

[3] Pub. L. 100-89, § 107(a); 25 U.S.C. § 1300g-6(a).

Texas, shall be prohibited on the Tribe's reservation or on tribal land." And it committed "to prohibit outright any gambling or bingo in any form on its reservation." Finally, § 107(c) gives Texas a mechanism to enforce the gaming ban: "bringing an action in the courts of the United States to enjoin violations of the provisions of this section."[4]

## B.    The Indian Gaming Regulatory Act

Not all tribes fall under the Restoration Act. Many tribes conduct gaming operations under the less restrictive structure of the Indian Gaming Regulatory Act. Enacted one year after the Restoration Act, IGRA aimed to establish uniform standards "to regulate gaming activity on Indian lands if the gaming activity is not specifically prohibited by Federal law and is conducted within a State which does not, as a matter of criminal law and public policy, prohibit such gaming activity."[5]

IGRA defines three classes of gaming, with varying levels of regulation:

- "Class I gaming" includes "social games solely for prizes of minimal value or traditional forms of Indian gaming" associated with "tribal ceremonies or celebrations."[6] IGRA tribes have "exclusive jurisdiction" over class I gaming.[7]

- "Class II gaming" includes bingo and card games "explicitly authorized" or "not explicitly prohibited" by state law.[8] But the definition excludes "electronic or electromechanical facsimiles of any game of chance or slot machines of any kind."[9] IGRA tribes may regulate class II gaming provided that they issue a

---

[4] Pub. L. 100-89, § 107(c); § 1300g-6(c).

[5] 25 U.S.C. § 2701(5).

[6] *Id.* §§ 2703(6), 2710(a)(1).

[7] *Id.* § 2710(a)(1).

[8] *Id.* § 2703(7)(A).

[9] *Id.* §§ 2703(7)(A), (B).

self-regulatory ordinance approved by the National Indian Gaming Commission, which administers IGRA.[10]

- "Class III gaming" includes all forms of gaming not included in class I or II, such as slot machines, roulette, and blackjack.[11] Class III gaming is prohibited unless the tribe obtains federal and state approval.[12]

## C.    The Pueblo's Gaming Activities & Prior Litigation

Since obtaining federal status under the Restoration Act, the Pueblo has repeatedly pursued gaming, and the State of Texas has repeatedly opposed it:

- *Ysleta I*: In 1993, the Pueblo sued Texas, arguing that the State refused to negotiate a compact in good faith under IGRA that would permit Class III gaming.[13] We disagreed, explaining that "the Tribe has already made its 'compact' with the State of Texas, and the Restoration Act embodies that compact."[14] We concluded "not only that the Restoration Act survives today but also that it—and not IGRA—would govern the determination of whether gaming activities proposed by the [] Pueblo are allowed under Texas law, which functions as surrogate federal law" on the lands of Restoration Act tribes.[15]

- *Ysleta II*: In 1999, Texas sued the Pueblo to enjoin gaming on the reservation.[16] The district court granted summary judgment for the State.[17] It concluded that the Pueblo's gaming did not comply with Texas laws and regulations and forbade the Pueblo from engaging in "'regulated' gaming activities unless it

---

[10] *Id.* § 2710(b).

[11] *Id.* § 2703(8).

[12] *Id.* § 2710(d).

[13] *Ysleta del Sur Pueblo v. Texas ("Ysleta I")*, 36 F.3d 1325, 1325 (5th Cir. 1994).

[14] *Id.* at 1335.

[15] *Id.*

[16] *Texas v. del Sur Pueblo ("Ysleta II")*, 220 F. Supp. 2d 668, 687 (W.D. Tex. 2001), *modified* (May 17, 2002), *aff'd sub nom. State v. del sur Pueblo,* 31 F. App'x 835 (5th Cir. 2002), *cert. denied*, 537 U.S. 815 (2002).

[17] *Id.* at 687.

4

complies with the pertinent regulations."[18] After considering equitable factors, the district court permanently enjoined the Pueblo from continuing its gaming activities.[19] We upheld the injunction.[20]

- **Other Litigation**: Further litigation ensued over the next two decades, including two determinations that the Pueblo was in contempt of the injunction.[21]

## D.     The Current Lawsuit

After a court enjoined the Pueblo's illegal "sweepstakes" gaming,[22] the Pueblo announced that it was "transitioning to bingo."[23] The State inspected the Pueblo's Speaking Rock Entertainment Center and found live-called bingo and thousands of machines that "look and sound like Las-Vegas-style slot machines" available to the public round the clock.

Texas sued to enjoin the Pueblo from operating these gaming activities, arguing that they violate Texas laws and regulations. The district court agreed and granted the State's motion for summary judgment. The Pueblo moved for reconsideration. Two weeks later, we reaffirmed in *Alabama-Coushatta* "that the Restoration Act and the Texas law it invokes—and not IGRA—govern the permissibility of gaming operations" on lands of tribes bound by the

---

[18] *Id.* at 690, 695−96.

[19] *Id.* at 695−97.

[20] *Ysleta II*, 31 F. App'x at 835.

[21] *See generally Texas v. Ysleta del Sur Pueblo*, 431 F. App'x 326 (5th Cir. 2011); *Texas v. Ysleta del Sur Pueblo*, No. EP-99-CV-320-KC, 2016 WL 3039991, at *22–26 (W.D. Tex. May 27, 2016); *Texas v. Ysleta del sur Pueblo*, No. EP-99-CV-320-KC, 2015 WL 1003879, at *15−20 (W.D. Tex. Mar. 6, 2015).

[22] *See Ysleta del Sur Pueblo*, 2016 WL 3039991, at *26–27.

[23] *See* Marty Schladen, *Tiguas Ending Sweepstakes, Starting Bingo*, EL PASO TIMES (July 23, 2016), available at https://www.elpasotimes.com/story/news/local/el-paso/2016/07/23/tiguas-ending-sweepstakes-starting-bingo/87458650/.

Restoration Act.[24] We also noted that "[t]hough *Ysleta I* arose in the context of the Pueblo's trying to conduct IGRA class III gaming, *Ysleta I* does not suggest that the conflict between the Restoration Act and IGRA is limited to class III gaming."[25]

Soon after *Alabama-Coushatta*, the district court denied the Pueblo's motion for reconsideration and permanently enjoined the Pueblo's operations. But the district court granted the Pueblo's motion to stay the injunction pending appeal, declaring the permanent injunction "effective ninety (90) days after all opportunities for appeal have been exhausted."

## II. STANDARD OF REVIEW

We review a trial court's grant of a permanent injunction for abuse of discretion.[26] A district court abuses its discretion if it (1) "relies on clearly erroneous factual findings" or "erroneous conclusions of law" when deciding to grant the injunction, or (2) "misapplies the factual or legal conclusions when fashioning its injunctive relief."[27] "Under this standard, the district court's ruling is entitled to deference."[28] "[B]ut we review *de novo* any questions of law underlying the district court's decision."[29]

## III. DISCUSSION

As in previous cases, the Pueblo avers that IGRA, not the Restoration Act, governs its ability to conduct gaming on its reservation. As in previous cases, we disagree.

---

[24] 918 F.3d at 449.

[25] *Id.* at 444 n.5.

[26] *Peaches Entm't Corp. v. Entm't Repertoire Assocs., Inc.*, 62 F.3d 690, 693 (5th Cir. 1995).

[27] *Id.*

[28] *Frew v. Janek*, 780 F.3d 320, 326 (5th Cir. 2015) (internal quotation marks omitted).

[29] *Id.* (internal quotation marks omitted).

## A.    The Restoration Act governs the Pueblo's gaming activity.

Texas insists that the Restoration Act—not IGRA—controls. The Pueblo argues that the two laws can be read and applied harmoniously, but if not, IGRA controls. The district court determined that under our precedent the Restoration Act and IGRA are incompatible and that the specific provisions of the former prevail over the general provisions of the latter. The district court is correct.

*Ysleta I*—a case between the same two parties—is squarely on point. In *Ysleta I*, we determined that "(1) the Restoration Act and IGRA establish different regulatory regimes with regard to gaming,"[30] and "(2) the Restoration Act prevails over IGRA when gaming activities proposed by the Ysleta del Sur Pueblo are at issue."[31] In other words, the Restoration Act "govern[s] the

---

[30] We "f[ou]nd it significant that § 107(c) of the Restoration Act establishes a procedure for enforcement of § 107(a) which is fundamentally at odds with the concepts of IGRA." *Ysleta I*, 36 F.3d at 1334. Specifically, under Restoration Act § 107(c), Texas may sue in federal court to enjoin the Tribe's violation of § 107(a). 25 U.S.C. § 1300g–6(c).

[31] *Ysleta I*, 36 F.3d at 1332. As the Supreme Court has emphasized, "where there is no *clear* intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment." *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (quoting *Radzanower v. Touche Ross & Co.,* 426 U.S. 148, 153 (1976)) (brackets omitted). Here, Congress did not show a "clear intention" in IGRA (a general statute that applies to tribes nationwide) to repeal the Restoration Act (a specific statute that only applies to two Texas tribes). Nor did Congress include a blanket repealer clause as to other laws that conflict with IGRA. Rather, when enacting IGRA soon after the Restoration Act, Congress explicitly stated in two different provisions that IGRA should be considered in the context of other federal law. *See* 25 U.S.C. § 2701(5) ("The Congress finds that . . . Indian tribes have the exclusive right to regulate gaming activity on Indian lands if the gaming activity is not specifically prohibited by federal law."); *id.* § 2710(b)(1)(A) (explaining that tribes may engage in class II gaming if, among other things, "such gaming is not otherwise specifically prohibited on Indian lands by Federal law"). Plus, as the *Ysleta I* court noted, "in 1993, Congress expressly stated that IGRA is *not* applicable to one Indian tribe in South Carolina, evidencing in our view a clear intention on Congress' part that IGRA is not to be the one and only statute addressing the subject of gaming on Indian lands." *Ysleta I*, 36 F.3d at 1335.

determination of whether gaming activities proposed by the [] Pueblo are allowed under Texas law, which functions as surrogate federal law."[32]

Just last year—twenty-five years after *Ysleta I*—we reaffirmed its reasoning and conclusion in *Alabama-Coushatta*.[33] And we re-reaffirm today[34]: The Restoration Act and IGRA erect fundamentally different regimes, and the Restoration Act—plus the Texas gaming laws and regulations it federalizes—provides the framework for determining the legality of gaming activities on the Pueblo's lands.

**B.     Under the Restoration Act, all of Texas's gaming restrictions operate as federal law on the Pueblo's reservations.**

We held in *Ysleta I* and reaffirmed in *Alabama-Coushatta* that Texas gaming law "functions as surrogate federal law" on the land of Restoration Act tribes.[35] Indeed, the Pueblo agreed to the Restoration Act's gaming provisions as a condition necessary to gain the benefits of federal trust status. In this case, the Pueblo argues that § 107(a) of the Restoration Act does not bar its bingo activities because Texas *regulates* rather than *prohibits* bingo. The Pueblo contends that (1) "prohibit" has a special meaning in federal Indian law as used by the Supreme Court in *Cabazon Band*,[36] and (2) courts should apply the

---

[32] *Id.* And, as we noted in *Ysleta I*, "[i]f the [Pueblo] wishes to vitiate [the gaming provisions] of the Restoration Act, it will have to petition Congress to amend or repeal the Restoration Act rather than merely comply with the procedures of IGRA." *Id.*

[33] *Alabama-Coushatta*, 918 F.3d at 442.

[34] We follow a consistently applied rule of orderliness. Under this "well-settled Fifth Circuit rule," a panel "may not overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or [the] en banc court." *Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008). "For a Supreme Court decision to satisfy [the] rule of orderliness, it must be unequivocal, not a mere 'hint' of how the Court might rule in the future." *Mercado v. Lynch*, 823 F.3d 276, 279 (5th Cir. 2016) (quoting *United States v. Alcantar*, 733 F.3d 143, 146 (5th Cir. 2013)). And it "must be more than merely illuminating with respect to the case before" us. *In re Tex. Grand Prairie Hotel Realty, L.L.C.*, 710 F.3d 324, 331 (5th Cir. 2013).

[35] *Ysleta I*, 36 F.3d at 1334−35; *Alabama-Coushatta*, 918 F.3d at 442.

[36] *California v. Cabazon Band of Mission Indians*, 480 U.S. 202 (1987).

*Cabazon Band* criminal-prohibitory/civil-regulatory distinction as the Supreme Court did when applying IGRA.

This issue was also decided in *Ysleta I*. We held that "Congress—and the Tribe—intended for Texas' gaming laws *and regulations* to operate as surrogate federal law on the Tribe's reservation in Texas."[37] And again, the Pueblo's tribal resolution urged Congress to pass "language which would provide that all gaming, gambling, lottery, or bingo, as defined by the laws *and administrative regulations* of the State of Texas, shall be prohibited on the Tribe's reservation or on tribal land."[38] Under our rule of orderliness,[39] the Pueblo's arguments are foreclosed by decades-old precedent.[40] Like the district court, we conclude that, under *Ysleta I*, "the [Pueblo] is subject to Texas's regulations," which function as surrogate federal law.

---

[37] 36 F.3d at 1334 (emphasis added). To reach this conclusion, we considered the text and legislative history of the Restoration Act. *Id.* at 1333−34. The *Ysleta I* court emphasized the Pueblo's commitment to prohibit all gambling on their reservation, as memorialized in Tribal Resolution No. T.C.-02-86, which the Restoration Act incorporates in § 107(a). *Id.* Plus, the *Ysleta I* court noted that, as an enforcement mechanism, "Congress provided in § 107(a) that '[a]ny violation of the prohibition provided in this subsection shall be subject to *the same civil and criminal penalties* that are provided by the laws of the State of Texas.' 25 U.S.C. § 1300g–6(a) (emphasis added). Again, if Congress intended for the *Cabazon Band* analysis to control, why would it provide that one who violates a certain gaming prohibition is subject to a *civil* penalty?" *Id.*

[38] Tribal Resolution No. T.C.-02-86 (emphasis added).

[39] *See supra* note 34. The Pueblo has argued that the findings in *Ysleta I* are merely persuasive dicta, but the district court already rejected that argument in *Ysleta II*, which we summarily affirmed. *Ysleta II*, 220 F. Supp. 2d at 687. Even assuming it was dicta, "[w]e are free to disregard dicta from prior panel opinions when we find it unpersuasive." *Crose v. Humana Ins. Co.*, 823 F.3d 344, 349 n.1 (5th Cir. 2016) (internal quotation marks and citation omitted). Here, we do not.

[40] *Alabama-Coushatta*, 918 F.3d at 449 n.21 (quoting *Ysleta I*, 36 F.3d at 1333−34) (recognizing the rule of orderliness and reaffirming *Ysleta I*'s conclusion).

## C.     The district court did not abuse its discretion by granting Texas injunctive relief against the Pueblo's gaming.

The Pueblo challenges a specific part of the district court's permanent injunction analysis: the balancing of equities. Specifically, the Pueblo asserts that the district court erred because the balance of equities did not favor a permanent injunction given the significant economic impact of their gaming operations.

Here, too, we side with the district court: "[A]lthough the Tribe has an interest in self-governance, the Tribe cannot satisfy that interest by engaging in illegal activity." Allowing ongoing operations would countenance ongoing violations. Yes, the Pueblo benefits economically from gaming, but even if this is deemed a public interest rather than a private one, it is only achievable via unlawful gaming.[41] As the district court noted, Texas "and its citizens have an interest in enforcing State law, and seeking an injunction is the only way that the State may enforce its gaming law on the Pueblo reservation."[42] The balance of hardships tips unquestionably in the State's favor.

The district court in *Ysleta II* also weighed equitable factors and determined that "[t]he fruits of [the Pueblo's] unlawful enterprise are tainted by the illegal means by which those benefits have been obtained."[43] We summarily affirmed.[44] Here, too, "because the Tribe's operations run contrary to Texas's gaming law, the balance of equities weighs in favor of the State."[45] The district court did not abuse its discretion.

---

[41] *See Idaho v. Coeur d'Alene Tribe*, 794 F.3d 1039, 1046 (9th Cir. 2015).

[42] *See* Restoration Act § 107(c).

[43] *Ysleta II*, 220 F. Supp. 2d at 697.

[44] *Ysleta II*, 31 F. App'x at 835.

[45] *Texas v. Ysleta del Sur Pueblo*, No. EP-17-CV-179-PRM, 2019 WL 639971, at *14 (W.D. Tex. Feb. 14, 2019).

**D.    The Texas Attorney General had authority to bring this suit.**

Finally, the Pueblo argues that Texas—through its Attorney General—lacked authority to seek relief under the Restoration Act. In prior litigation, the Pueblo has conceded Texas's authority to sue under the Restoration Act.[46] But in this case, the Pueblo cites a 1999 district court order from a previous Restoration Act suit brought by Texas.[47] There, the district court initially questioned the Attorney General's authority to bring suit, but ultimately concluded, after Texas amended its complaint to include a state nuisance claim, that the Attorney General had the authority under both Texas and federal law to enjoin violations of the Restoration Act.[48]

The Pueblo seems to suggest that the Restoration Act alone doesn't provide the requisite authority to sue, yet it acknowledges that courts have held that Texas nuisance law provides an affirmative basis for the Attorney General to sue on the State's behalf. Notably, Texas invoked its nuisance laws when pursuing this case. So even assuming the 1999 district court order stands for the claimed proposition, it matters not here.

Next, the Pueblo argues that Texas nuisance law—as amended in 2017—no longer provides an affirmative basis for Texas's suit. The amendments explain that "[t]his section does not apply to an activity exempted, authorized,

---

[46] Brief of Appellants at 22, *Texas v. Ysleta del Sur Pueblo*, 421 F. App'x 326 (5th Cir. 2011) (No. 10-50804), 2010 WL 5625027 (contending that Congress limited Texas's remedies to "the right to bring an action in federal court to enjoin alleged violations of the 'gaming activities' section of the Restoration Act"); Brief of Appellants at 19, *Ysleta del Sur Pueblo v. Bush*, 192 F.3d 126 (5th Cir. 1999) (No. 98-50859), 1999 WL 33658598 (acknowledging that "[t]he State of Texas may bring an action in the courts of the United States to enjoin gaming activities of the Pueblo under the Restoration Act").

[47] *See Texas v. Ysleta del sur Pueblo*, 79 F. Supp. 2d 708, 714 (W.D. Tex. 1999), *aff'd sub nom. State v. Ysleta del Sur*, 237 F.3d 631 (5th Cir. 2000)).

[48] *Ysleta II*, 220 F. Supp. 2d at 676 ("After the Attorney General filed an Amended Complaint, the district court, by its order of January 13, 2002, overruled another motion to dismiss, concluding that the Attorney General had the authority to bring this action.").

or otherwise lawful activity regulated by federal law."[49] Even assuming this provision reaches gaming activities, the Pueblo's activity is not "exempted, authorized, or otherwise lawful activity regulated by federal law."[50] First, the Pueblo's gaming operation is not "exempted" from federal law; rather, it's explicitly subject to injunctive action in federal court if it's impermissible under Texas law.[51] Second, the Pueblo's gaming is not "authorized" by federal law; indeed, the Restoration Act explicitly prohibits the Pueblo's gaming activities: "All gaming activities which are prohibited by the laws of the state of Texas are hereby prohibited on the reservation and lands of the tribe."[52] Third, the Pueblo's gaming is not "regulated" by federal law, nor is it "otherwise lawful." As discussed, Texas gaming law—federalized through the Restoration Act— prohibits the Pueblo's activities.[53] Any argument that the Pueblo's illegal gaming is "exempted" yet also "authorized" by law is absurd. Multiple Federal courts have repeatedly recognized that Texas—through its Attorney General— possesses the capacity to sue under the Restoration Act.[54]

---

[49] TEX. CIV. PRAC. & REM. CODE § 125.0015(e). According to the statute, this provision was added to *expand* the law to include web-based operations connected to specific forms of criminal activity, like prostitution. *See id.* § 125.0015(c). There is no indication that this provision relates to whether gambling is a common nuisance.

[50] *Id.* § 125.0015(e).

[51] 25 U.S.C. §§ 1300g-6(a), (c).

[52] *Id.* § 1300g-6(a).

[53] *Id.*

[54] *See, e.g.*, *Ysleta del Sur Pueblo*, 79 F. Supp. 2d at 710 ("[T]he Restoration Act allows the State of Texas to bring suit in federal court to enjoin any such violations [of the Restoration Act]."); *Alabama-Coushatta Tribes of Tex. v. Texas*, 208 F. Supp. 2d 670, 680 (E.D. Tex. 2002) ("The injunction sought by the State of Texas is authorized by both state and federal statutes."); *see also Ysleta del Sur Pueblo*, 2016 WL 3039991, at *27 (upholding the injunction sought by Texas against the Pueblo pursuant to the Restoration Act).

## IV. CONCLUSION

Our settled precedent resolves this dispute: The Restoration Act governs the legality of the Pueblo's gaming activities and prohibits any gaming that violates Texas law. The district court correctly applied that straightforward precedent, and we AFFIRM the district court's judgment.