20-1495-cv
*Johnson v. AGS CJ Corp.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21st day of April, two thousand twenty-one.

PRESENT:     AMALYA L. KEARSE,
             JOSÉ A. CABRANES,
             ROSEMARY S. POOLER,
                          *Circuit Judges.*

_____

ROY JOHNSON, an individual, and JAMES BRESLO, an individual,

                    *Plaintiffs-Appellants,*                20-1495-cv

                  v.

AGS CJ CORPORATION, formerly known as AMAYA AMERICAS CORPORATION,

                    *Defendant-Appellee.*

_____

| | |
|---|---|
| **FOR PLAINTIFFS-APPELLANTS:** | JEFF L. TODD (Michael K. Avery, *on the brief*), McAfee & Taft, A Professional Corporation, Oklahoma City, OK. |
| **FOR DEFENDANT-APPELLEE:** | STEPHEN L. SAXL, Greenberg Traurig, LLP, New York, NY. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Ronnie Abrams, *Judge*).

1

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court be and hereby is **AFFIRMED**.

Plaintiffs-Appellants Roy Johnson and James Breslo appeal from an April 7, 2020 grant of summary judgment in favor of Defendant-Appellee AGS CJ Corporation, formerly known as Amaya Americas Corporation ("Amaya").

Johnson and Breslo argue that they are entitled to $7 million that was held back from a 2013 Stock Purchase Agreement ("SPA") under which Amaya agreed to purchase Diamond Game Enterprises. Diamond Game leased gaming equipment to the Ysleta del Sur Pueblo Tribe, also known as the Tigua Tribe of Texas (the "Tribe"). Prior to the closing of the sale pursuant to the SPA, Diamond Game was named as a defendant in a contempt motion instituted in a long-running lawsuit brought by the State of Texas (the "Texas Action") against the Tribe for alleged illegal "sweepstakes" gaming activities. As a result, in 2014, Amaya negotiated with Johnson and Breslo a $7 million holdback of the purchase price (the "Amended SPA").[1] The $7 million would be held back until, among other conditions, a "Texas Clearance Event" occurred—as relevant here, the "final disposition of the . . . Texas Action by a court of competent jurisdiction, including any and all appeals, which *permits* continued operation of the Texas Equipment with or without commercially reasonable modifications to the Texas Equipment." App'x 425 (emphasis added).

Since at least 2009, the Tribe had been required to seek pre-approval of specific gaming activities from the U.S. District Court for the Western District of Texas (the "Texas Court") to determine their permissibility under Texas law. When it decided the contempt motion, the Texas Court issued an order holding that "the Tribe would no longer be required to seek pre-approval of proposed gaming activities" because such a process runs afoul of the Restoration Act, Pub. L. No. 100-89, 101 Stat. 666 (1989), and the federal courts lack jurisdiction to issue advisory opinions. *Texas v. Ysleta del Sur Pueblo*, No. EP-99-CV-320-KC, 2016 WL 3039991, *20-21 (W.D. Tex. May 27, 2016) (the "2016 Order"). It declared that the Tribe's "sweepstakes" proposal was illegal under Texas law, but declined to consider whether bingo could be pre-approved as permissible in light of its decision to terminate the pre-approval process. We assume the parties' familiarity with the remaining underlying facts, the procedural history of the case, and the issues on appeal.

The essence of this case is the meaning of the word "permits." The District Court found that "no Texas Clearance Event occurred because the Texas Court did not 'permit' the continued

---

[1] Both the SPA and the Amended SPA provide that the agreements are to be construed in accordance with New York law.

operation of the Texas Equipment"; instead, the 2016 Order merely found the sweepstakes activities to be unlawful, and expressly declined to "'opine' on the 'permissib[ility]' of bingo." App'x 435, 437.

We review the District Court's "grant of summary judgment *de novo*, examining the evidence in the light most favorable to, and drawing all inferences in favor of, the [party against whom judgment was granted]." *Sullivan-Mestecky v. Verizon Comm'ns Inc.*, 961 F.3d 91, 97 (2d Cir. 2020) (quoting *Burke v. Kodak Ret. Income Plan*, 336 F.3d 103, 109 (2d Cir. 2003)). Under New York law, the district court's task is "to interpret the contract to give effect to the intent of the parties as expressed in the clear language of the contract." *Morgan Stanley Grp. v. New England Ins.*, 225 F.3d 270, 275 (2d Cir. 2020) (internal quotation marks omitted). "[S]ummary judgment may be granted only where the language of a contract is unambiguous. . . . When the relevant language has 'a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion,' no ambiguity exists." *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1192 (2d Cir. 1996) (quoting *Breed v. Ins. Co. of North America*, 46 N.Y.2d 351, 355 (1978) (brackets omitted)).

Johnson and Breslo argue that the 2016 Order was a Texas Clearance Event because, in eliminating the pre-approval process, it implicitly "permitted" gaming activities to commence, thus permitting the continued operation of the equipment. They also argue that the District Court improperly considered parol evidence to find the meaning of "permit." Amaya argues that the word "permits" in the context of the Amended SPA means to find something "permissible," and that the 2016 Order did not find bingo "permissible," implicitly or otherwise.

After reviewing the purpose of the Amended SPA, the broader context provided by the agreement, and the plain meaning of the word "permits," we agree with the District Court that the word "permits" as used in the Amended SPA required the Texas Court to affirmatively permit gaming activities that could utilize the equipment. Black's Law Dictionary defines "permit" as "[t]o consent to formally; to allow (something) to happen, esp. by an official ruling, decision, or law." (11th ed. 2019). Likewise, Merriam-Webster defines "permit" as "to consent to expressly or formally" or "to give leave: authorize."[2] These definitions connote express permission. And while later-listed definitions of "permit"—"to allow or admit" or "to make possible"—allow implicit permission, the context provided by the Amended SPA makes clear that the parties intended the former.

The parties entered into the Amended SPA in response to the State of Texas specifically naming Diamond Game in a contempt motion alleging that sweepstakes gaming was illegal under

---

[2] *Permit*, MERRIAM WEBSTER, https://www.merriam-webster.com/dictionary/permit (last visited Apr. 19, 2021).

Texas law. The Amended SPA "holdback" thus served two purposes—first, to resolve Amaya's legal and regulatory risk resulting from the Texas Action, and second, to ensure that Amaya would not have to pay for machines that could not generate revenue. When the parties negotiated the Amended SPA, they understood that the Tribe was required to submit proposals of its gaming activities to the Texas Court for review. It follows that the parties knew that the Texas Court disposition could "clear" the lawful use of the equipment by approving a gaming activity for which it could be used. As the District Court observed, "there was no mechanism in place for the Texas Court to grant implied permission to a gaming proposal at the time the parties executed the [Amended] SPA." App'x 437. We decline to find that the Texas Court "permitted" the Tribe to use the machines for bingo, considering that the Texas Court expressly declined to opine on that activity's legality in the 2016 Order, and has since declared bingo unlawful, as affirmed by the Fifth Circuit. *Texas v. Ysleta Del Sur Pueblo*, 955 F.3d 408, 415-16 (5th Cir. 2020), *petition for cert. filed* (U.S. Oct. 9, 2020) (No. 20-493).

Finally, we hold that the District Court did not rely on parol evidence to find the meaning of the word "permit." It found in favor of Amaya based on the plain meaning of the word and the purpose of the Amended SPA, and it only turned to parol evidence to supplementally explain that such evidence did not conflict with the plain meaning of the word.

## CONCLUSION

We agree with the District Court that the word "permits" in the context of the parties' Amended SPA is not ambiguous, that it means more than "not prohibit," and that that it referred to a type of Texas Clearance Event that would affirmatively "permit" continued operation of the machines by approving a gaming activity for which they could be utilized.

We have reviewed all of the arguments raised by Plaintiffs-Appellants Johnson and Breslo on appeal and find them to be without merit. For the foregoing reasons, we **AFFIRM** the April 9, 2020 judgment of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

4